545 A.2d 438

Jesse Henry, Deceased, Angela Gerris Henry, Widow, Petitioner *v.* Workmen's Compensation Appeal Board (Mayer Pollock Corporation), Respondents.

Submitted on briefs June 1, 1988, to Judges CRAIG and PALLADINO; and Senior Judge BARBIERI, sitting as a panel of three.

*David Freeman,* for petitioner.

*Steven J. Proctor, Binder, Kalis, Proctor, Breidenbach & Bennett,* for respondent.

OPINION BY SENIOR JUDGE BARBIERI, August 3, 1988:

Angela Gerris Henry (Claimant), widow of Jesse Henry (Decedent), petitions for review of the order of the Workmen's Compensation Appeal Board (Board) dismissing her fatal claim petition. We affirm.

Decedent was employed by Mayer Pollock Corporation (Employer), a wrecking contractor, as a burner. On May 20, 1981, Decedent was burning paint on a job at the Franklin Mint when he inhaled lead fumes from the paint and contracted lead poisoning. Pursuant to a notice of compensation payable, Decedent received benefits for total disability in the amount of $262.00 per week. He successfully underwent chelation treatments until his blood lead level returned to normal. However, Decedent continued to suffer headaches and dizziness which his treating physician attributed to hypertension.

Decedent died on May 2, 1983. Doctor Robert L. Catherman, the deputy medical examiner who performed the autopsy, opined that the cause of death was

arteriosclerotic coronary disease and alcoholic cardiomyopathy. Alcoholic cardiomyopathy is a general term used to describe an abnormal enlargement of the heart muscles often found in chronic alcoholics. At the time of his death, Decedent had a blood alcohol level of .18. (Deposition of Doctor Robert L. Catherman taken 7/24/85 at 35.) His gastric or stomach content was .29% alcohol and .28% Elavil, a drug commonly prescribed for depression. (Deposition of Doctor Robert L. Catherman taken 7/24/85 at 35, 37.)

It is uncontradicted that Decedent did not die of lead poisoning. Rather, it is Claimant's theory of the case that Decedent's lead poisoning caused depression, which led to heavy drinking, and that the heavy drinking caused or aggravated Decedent's alcoholic cardiomyopathy, which in turn was a substantial cause of his death. The referee rejected this chain of causation as too tenuous and the Board affirmed.

Claimant's case is supported by her testimony that Decedent had been a social drinker before his incident of lead poisoning but began to drink as much as a fifth of liquor a day six or seven months before he died. However, the referee chose to accept the opinion of Doctor Catherman that alcoholic cardiomyopathy requires many years of excessive abuse of alcohol, and that the degree of enlargement and damage to Decedent's heart was not consistent with alcohol abuse of only six or seven months duration, or even of two years duration. (Deposition of Doctor Robert L. Catherman taken 7/24/85 at 15, 16.) Consequently, the referee found that Decedent's alcohol abuse predated his lead poisoning attack by several years.

Claimant argues that the referee erred in applying the substantial contributing factor test of *McCloskey v. Workmen's Compensation Appeal Board (J.H. France Refractories, Inc.)*, 501 Pa. 93, 460 A.2d 237 (1983) to

this case. In *McCloskey*, the court held that where there are multiple causes of death and the immediate cause was non-compensable, the claimant may recover by presenting unequivocal medical evidence that the deceased suffered from an occupational disease which was a substantial, contributing factor among the secondary causes in bringing about death. *McCloskey* and its progeny are occupational disease cases. The present case concerns a single attack of lead poisoning. In injury cases, as opposed to occupational disease cases, Claimant proposes that the standard should be less stringent, namely that the injury materially contribute to the cause of death.

We are unpersuaded that there is a need for a different standard in injury cases. Claimant's argument that "materially contributing" is a less stringent standard than "substantially contributing" is nothing more than an exercise in semantics. In *Manuel v. N.L. Industries*, 502 Pa. 329, 466 A.2d 606 (1983), the claimant was exposed to lead poisoning over the course of his employment as an occupational disease and later died of heart failure. The claimant showed that the lead poisoning weakened the decedent's resistance to the symptoms of heart failure. Our Supreme Court had no difficulty in applying the *McCloskey* standard to deny recovery. The fact that in the present case a single attack of lead poisoning weakened Decedent's resistance to alcoholism is not a sufficiently distinguishing factor to justify a new standard or permit recovery under *McCloskey*.

While Claimant's physician and psychiatrist did present evidence that Decedent's depression and headaches triggered excessive drinking, the referee was perfectly justified in accepting Doctor Catherman's opinion that Decedent's alcoholism predated his lead poisoning injury. *Bruckner v. Workmen's Compensation Appeal Board (Lancaster Area Vo-Tech)*, 104 Pa. Commonwealth Ct. 290, 521 A.2d 980 (1987). None of

Claimant's experts who testified ever examined Decedent or were present at his autopsy. The order of the Board will be affirmed.

Order

Now, August 3, 1988, the order of the Workmen's Compensation Appeal Board at No. A-92695, dated July 10, 1987, is hereby affirmed.